IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| DELINDA FULKERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:12-05022-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Delinda Fulkerson seeks judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.* Plaintiff alleges she became disabled on September 1, 2009 because of combination of psychological impairments. The ALJ found that although Plaintiff suffered from several severe impairments, she retained the residual functional capacity ("RFC") to perform simple unskilled work. After carefully reviewing the record, the Court holds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

**Factual and Procedural Background**

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed her application for disability insurance benefits on October 22, 2009. The Commissioner initially denied her applications. Following a hearing, the ALJ denied Plaintiff's application on October 20, 2011. The Appeals Council denied Plaintiff's request for review on

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant in this suit.

December 5, 2011, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

## Analysis

Generally, a federal court's review of the Commissioner's decision to deny an application for benefits is restricted to determining whether the Commissioner's decision is consistent with the Act, the regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than 12

months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[2]

Plaintiff contends the ALJ erred in: (1) finding her post-traumatic stress disorder ("PTSD") and personality disorders were non-severe impairments; (2) determining her RFC; (3) rejecting the opinions of her treating counselors; (4) failing to develop the record; and (5) failing to compose a proper hypothetical to the vocational expert ("VE").

**A.      The ALJ correctly found Plaintiff's PTSD and personality disorders were non-severe impairments.**

The ALJ found Plaintiff suffered from severe impairments of major depression, anxiety disorder NOS, obsessive compulsive disorder, and borderline intellectual functioning. R. at 12. Plaintiff argues the ALJ erred because he should have found that Plaintiff's PTSD and personality disorder were also severe impairments since several of Plaintiff's counselors diagnosed her with these disorders.

A severe impairment is an impairment that significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment is not severe when it has no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1521; Social Security Ruling (SSR) 96-3p. Additionally, an impairment must be "medically determinable," 20 C.F.R. §§ 404.1520(a)(4)(ii), and only "acceptable medical sources," such as

---

[2] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

3

physicians and licensed psychologists, can provide evidence to establish the existence of a medically determinable impairment. *Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007). The claimant bears the burden of establishing her impairment is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Although severity is not an onerous requirement to meet, it is also not a toothless standard. *Id.* at 70.

Here, the ALJ had good reason for finding Plaintiff's PTSD and personality disorder were non-severe: None of the counselors who diagnosed the Plaintiff with these disorders—Shelly Swearigen, M.S.; Karl Stemmer, R.N., M.S.N., F.P.M.H.N.P.; and Judith Kellenberger, M.S.—are "acceptable medical sources." Thus, there was no evidence in the record supporting such a finding.[3] Accordingly, there is no error here.

**B.      The ALJ properly assessed Plaintiff's RFC.**

Plaintiff also asserts the ALJ erred in determining her RFC. Plaintiff argues the ALJ should have found she was limited to working at a slow pace because she testified at the hearing that in previous jobs she has had trouble keeping up with the pace of work. R. at 60-61. Instead, the ALJ included a minor pace-related restriction in the RFC, finding Plaintiff was moderately limited in concentration, persistence, and pace, which in turn limited her to "simple, unskilled" work with limited changes in her work environment. R. at 14.

No stronger limitation was required because no clinical or other medical evidence in the record supports such a restriction. In fact, the medical evidence—reports from consultative examiner Dr. Kevin Whisman, Psy. D., and psychiatric nurse Karl Stammer—indicate Plaintiff can adequately sustain concentration and persistence to perform simple to moderately complex tasks. R. at 274-75, 315. This is confirmed by the fact that at the time of the hearing she was

---

[3] Although the ALJ did not find these disorders were severe impairments, he considered their effects in determining Plaintiff's RFC. R. at 15.

working part-time as a dishwasher and did not report any difficulty keeping up with the pace of work.  Additionally, the ALJ made a detailed finding that Plaintiff's self-reported limitations were not credible to the extent they were inconsistent with the RFC assessment.  R. at 17.  This credibility finding, which Plaintiff does not dispute, was based on Plaintiff's extensive activities of daily living, poor work history, and three previously denied applications for disability benefits.  R. at 17, 148, 311.  These factors undermine Plaintiff's claim of not being able to work at an acceptable pace.

There is also no merit to Plaintiff's complaint that the ALJ erred by failing to cite any medical authority for the limitations in the RFC.  An RFC determination is not based only on the "medical" evidence; it is based on all the relevant, credible evidence of record.  *See Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).  The claimant bears the burden of establishing her RFC, which means the ALJ may rely on the lack of supporting medical evidence in determining the claimant's RFC.  *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) ("[T]he claimant's failure to provide medical evidence [concerning work-related restrictions] should not be held against the ALJ when there *is* medical evidence that supports the ALJ's decision.").  In this case, because there is medical evidence on the record supporting the ALJ's RFC determination and a lack of credible evidence supporting Plaintiff's claim that she has pace-related limitations, the ALJ rightly did not include a stringent pace related restriction.

Finally, contrary to Plaintiff's suggestion, the ALJ's RFC assessment restricting Plaintiff from "unusually close interaction" with coworkers is not ambiguous and undefined.  There is no evidence that the VE did not understand what "unusually close interaction" meant, nor did Plaintiff's counsel complain during the hearing that this phrase was unclear.  Additionally, at least one other court has upheld the use of a substantially similar phrase in formulating the claimant's RFC.  *Cf. Jackson v. Astrue*, 4:11-CV-1061-CEJ, 2012 WL 3230457, at *7-8 (E.D.

Mo. Aug. 6, 2012) (affirming RFC determination that prohibited claimant from having "unusually close interaction" with others while working). Accordingly, the ALJ did not err in formulating Plaintiff's RFC.

**C.      The ALJ did not err in giving less weight to the "other medical source" opinions.**

Plaintiff contends the ALJ should have adopted a medical source statement completed by Judith Kellenberger, M.S., the mental health counselor who saw Plaintiff and her husband in connection with the loss of custody of their two children. Ms. Kellenberger completed a medical source statement form which stated Plaintiff had marked mental limitations in several key work-related areas, including marked restrictions in her ability to interact with the general public, get along with coworkers, and complete a normal workday without interruption from psychiatric symptoms. R. at 307-08. Plaintiff argues this evidences her inability to work.

The ALJ gave two valid reasons for not adopting Ms. Kellenberger's report. First, Ms. Kellenberger reported that Plaintiff had mostly moderate limitations. R. at 15. Second, the overall tenor of Ms. Kellenberger's report is that the Plaintiff is capable of performing simple work. As the ALJ noted, Ms. Kellenberger recommended Plaintiff seek help from Vocational Rehabilitation in finding and maintaining employment, which presupposes that Plaintiff is capable of performing some type of work. R. at 295.

Similarly, the ALJ did not err in not assigning more weight to a consultative psychosocial/clinical assessment joint-authored by Karl Stammer, R.N., and Shelly Swearingen, M.S., of the Ozark Center which indicated Plaintiff has major impairments in occupational functioning. The ALJ discounted this report because it contradicted other treatment notes from the Ozark Center which indicated Plaintiff was currently working or being referred for vocational services and so was capable of performing at least part-time work. R. at 338, 345-46.

Consistent with the regulations, the ALJ assigned more weight to Dr. Whisman's opinion. Dr. Whisman is an "acceptable" medical source whose well-explained opinion was consistent with his own clinical examination.[4] R. at 274-75. It is the ALJ's role to resolve conflicts between medical opinions. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). Having provided reasons for rejecting the rationale of an "other medical source," the ALJ was justified in embracing a better supported opinion from a consultative doctor. *See Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (having provided reasons for rejecting "other medical source" opinions, the ALJ was justified in assigning weight to a consulting doctor, who "while not a treating physician, was an examining physician."). Accordingly, there is no error.

**D.     The ALJ did not fail to develop the record.**

Plaintiff further argues that the case should be reversed because the ALJ failed to develop the record. Plaintiff contends there is no doctor's opinion in the record which supports the RFC determination and that in formulating the RFC the ALJ substituted his own medical opinion for that of a medical professional.

This argument is factually incorrect. As discussed above, Dr. Whisman's opinion supports a finding that Plaintiff had no difficulty sustaining concentration and persistence to perform simple to moderately complex tasks. While Plaintiff disagrees with the doctor's opinion, there is substantial evidence on the record supporting the ALJ's decision. Consequently, this argument is meritless.

---

[4] Medical opinions are classified as "acceptable source" and "other source" opinions. Essentially, acceptable medical sources are psychiatrists and physicians; other sources include health staff such as counselors, nurses, and chiropractors. 20 C.F.R. § 404.1513 (stating a non-doctor is not an acceptable medical source but is an important "other" medical source of information which the ALJ must consider). All other things being equal, an "other medical source" opinion like a nurse or a chiropractor is given less weight than a doctor's opinion.

**E.      The ALJ's hypothetical question properly reflected Plaintiff's limitations.**

Finally, Plaintiff argues that VE's answer to the ALJ's hypothetical question is not substantial evidence upon which to base a disability determination because the question itself was flawed.  The ALJ's hypothetical question posited that Plaintiff had some mental limitations but retained the capacity to sustain concentration for simple, unskilled work in an environment that did not require frequent contact with the public or unusually close interactions with co-workers.  Plaintiff contends the hypothetical should have incorporated a restriction that she needed to work at a slow pace, repeating her earlier argument that the ALJ failed to properly assess her RFC.

A hypothetical question must set forth with reasonable precision only those impairments and limitations the ALJ finds are substantially supported by the record as a whole.  *Lacroix*, 465 F.3d at 889.  The claimant's discredited subjective complaints are properly excluded from a hypothetical question as long as the ALJ has a valid reason to discredit them.  *Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005).  Here the ALJ's hypothetical question was properly formulated because it included only Plaintiff's credible limitations.  Thus the VE's answer that Plaintiff could perform work existing in significant numbers is substantial evidence supporting the ALJ's determination.  *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

## Conclusion

After careful examination of the record as a whole, the Court finds the Commissioner's determination is supported by substantial evidence on the record.  Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:      April 16, 2013                                /s/ Greg Kays
                                                         GREG KAYS, JUDGE
                                                         UNITED STATES DISTRICT COURT